Filed 5/15/26  P. v. Vallarta CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

<table>
<tr><td>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROLANDO VALLARTA,<br><br>    Defendant and Appellant.</td><td>H052750<br>(Monterey County<br> Super. Ct. No. 20CR008419)</td></tr>
</table>

A jury convicted defendant Rolando Vallarta of a single count of grand theft by embezzlement while employed by Michael Avila as a house painter.  Vallarta admitted that he sustained a prior strike conviction and the trial court sentenced him to four years in prison.

Vallarta raises five issues on appeal:  (1) the trial court erred in denying the defense's motion to introduce text messages between Avila and Vallarta under Evidence Code section 356;[1] (2) he received ineffective assistance of counsel when his trial counsel failed to impeach Avila with the text messages; (3) the trial court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution by failing to provide a unanimity instruction to the jury; (4) the cumulative prejudice of the first three

---

[1] Unspecified statutory references are to the Evidence Code.

issues deprived him of his right to a fair trial; and (5) the trial court abused its discretion in denying a *Romero*[2] motion to dismiss the prior strike at sentencing.

We will affirm the judgment for the reasons explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Michael Avila owned a construction business. Avila's son owned two adjoining properties at Clay Street in Monterey. Avila hired Vallarta to perform painting projects for the company, and in approximately June 2020, Avila assigned Vallarta to paint the Clay Street properties. Avila purchased a paint sprayer for $2,195.04 to use on the Clay Street project. Avila also authorized Vallarta to make purchases on the business's account at a local paint store.

Avila testified that on July 6, 2020, either he or his son gave Vallarta a "punch list" of tasks that needed to be performed to complete the job at the Clay Street properties. Avila testified that the list contained "small items" that might include tasks such as "touch-up painting around a window or maybe reinstalling a light that had been taken off in order to paint or removing masking tape, those kind of things." Avila also testified that the items on a punch list could include "larger items, finish painting, an e[a]ve or something like that." Avila testified that typically, items on a punch list would require "small tools that a painter would carry normally, and maybe a small can of paint, a little masking material, that kind of thing."

Two days later, in the afternoon of July 8, 2020, Vallarta and a woman who had assisted Vallarta with some painting projects went to the paint store and purchased $907.55 in items on the company account. At trial, Avila reviewed a receipt listing these items and testified: "[I]n particular, there's a number of items that are maintenance items or accessories or additions to the spray rig that would be not needed at all on this project,

---

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).
[3] We provide an overview of the facts to provide context. We further describe the record evidence relevant to each challenge in our analysis, *post*.

2

and we had performed the [Clay Street] project completely with the equipment we had. So there's no reason to buy any of those materials. [¶] Many of the materials on these lists, examples of a package of 10 rollers times two. You know, just all kinds of miscellaneous tools and masking material, large rolls of masking material and those kind of things, just an extraordinary amount of material for a couple of small items to touch up."

Avila arrived at the Clay Street properties at about 5:00 p.m. that same day and told Vallarta he was to complete the Clay Street job the next morning, after which his employment with Avila would end. At that point, Avila testified, "two or three small items" remained incomplete from the punch list provided two days earlier. Avila testified that he did not focus on what equipment was on site at the time, but "there wasn't a lot of painting materials or that kind of thing left." Vallarta did not mention he had purchased items at the paint store that afternoon.

During the time Vallarta was working at the Clay Street properties, he kept the paint sprayer and other equipment and supplies on site under a tarp in the backyard of one of the homes on the property, away from the street and behind a locked fence. A tenant testified that Vallarta kept the items in the same location each night at the tenant's request. The tenant testified that he came home for lunch on July 8, 2020, and saw the items in that same area. The tenant then returned to work before 1:00 p.m. and upon returning to the house at about 6:00 p.m., the items were gone. The tenant's son also testified that he was home that afternoon and saw Vallarta place the sprayer and hoses in Vallarta's truck at some point before 4:00. The tenant's son testified that he did not recall any items being left behind when Vallarta departed the site that day.

Vallarta did not show up for work at the Clay Street properties the next day, July 9, 2020. The paint sprayer, the items purchased from the paint store the previous afternoon, and other miscellaneous items that had been stored at the property were gone.

3

Avila contacted Vallarta and asked Vallarta to return the items purchased from the paint store, but Vallarta did not do so. The items were not recovered.

Avila, the tenant, the tenant's son, and a law enforcement officer testified for the prosecution at trial. The defense called the same law enforcement officer and the woman who was at the paint store with Vallarta. The woman testified that they left their equipment and supplies at the Clay Street properties before departing on July 8, 2020, though in a different spot from the normal storage location. Vallarta did not testify.

The jury convicted Vallarta of the single count charged, grand theft by embezzlement (Pen. Code, § 487, subd. (a)). Vallarta admitted he was previously convicted of a prior strike offense (*id.*, §§ 667, subd. (d), 1170.12, subd. (b)). In bifurcated proceedings, the trial court found two alleged aggravating circumstances true: that Vallarta took advantage of a position of trust or confidence (Cal. Rules of Court, rule 4.421(a)(11)) and that he had served a prior prison term (*id.*, rule 4.421(b)(3)).[4]

At sentencing, the court denied Vallarta's *Romero* motion to dismiss his prior strike conviction, and it sentenced Vallarta to an aggregate term of four years (the middle term of two years for the grand theft conviction, doubled for the prior strike). This appeal timely followed.

## II. DISCUSSION

### A. *Denial of Defense Motion to Admit Text Messages Under Section 356*

Vallarta argues the trial court abused its discretion in denying his motion under section 356 to admit evidence of text messages he exchanged with Avila. He asserts that the trial court abused its discretion in two respects: (1) finding the text messages were hearsay and thus inadmissible; and (2) finding the text messages could not be admitted under section 356 because they were not part of the same "writing" as the paint store

---

[4] The trial court found not true an allegation that the crime involved an attempted or actual taking or damage of great monetary value. (Cal. Rules of Court, rule 4.421(a)(9)).

receipt and invoices the prosecution admitted. He contends that the trial court's error undermined his due process right to present a complete defense, and the error was not harmless under the standard for assessing prejudice due to constitutional error set forth in *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).

The Attorney General asserts that the trial court correctly determined the text messages were not admissible pursuant to section 356, and alternatively any error in excluding the messages was harmless.

We conclude that even assuming the trial court abused its discretion in denying the defense's motion to admit the text messages, the error was harmless.

### 1. *Factual background*

Prior to trial, Vallarta moved to introduce text messages under section 356. The defense motion asserted that the prosecution was expected to introduce records and receipts from the paint store showing equipment and supplies Vallarta purchased, and that the text messages were "directly relevant because they show the amount of work that Mr. Avila requested in relation to the supplies that were purchased." The motion further argued that the messages "make it necessary to understand why the supplies were purchased."

The motion attached four pages of text messages in which Avila provided Vallarta a list of the following items that still needed to be completed at the Clay Street properties:[5] "Remove masking and overspray from the front window"; "Remove all other masking material"; "Complete painting of trim at window on the front porch facing the street"; "Paint exterior both doors"; "Complete concrete stoop painting"; "Complete partially painted fence between yards"; "Paint underside of right eave" in the garage;

---

[5] Avila testified at trial that he was not sure whether he or his son sent the punch list, and the messages do not indicate the identity of the sender. The defense motion averred that the messages were exchanged between Avila and Vallarta. On appeal, both parties treat the messages as exchanged between Avila and Vallarta.

"Reinstall 1 x 4 wood blocks are [*sic*] eave" in the garage; "Finish painting two kitchen windows and surrounding fence exposed by Landscape trimming"; "Remove masking on rear window and satellite dishes"; and "Remove both dishes at rear/tenant says not in use." The copy of the text messages the defense provided is not dated but the message from Avila with this list is annotated as sent at 4:22 p.m. on a Monday. Avila testified that either he or his son sent the punch list to Vallarta on July 6, 2020, and the parties stipulated that the last day Vallarta appeared at the Clay Street location—July 8, 2020—was a Wednesday.

At a hearing on the motion, the trial court confirmed that the prosecution did not intend to introduce any of the text messages. The trial court then denied the defense motion, stating it was a "condition precedent" under section 356 that "the People must first offer in a part of a conversation, part of a writing, a letter, and then the response and the rest of the conversation to explain that first comes in." The defense responded that the messages were admissible under section 356 because "[i]n order for the jurors to understand the work that [Vallarta] had to do and compare the supplies they have to look at the punch list of what he was supposed to do in comparison to the supplies." The trial court rejected this argument, stating that the messages were not part of the same writing as the documents showing the paint store purchases, and that while the messages might be relevant, they constituted hearsay and were not admissible under section 356.

### 2. *Legal principles and standard of review*

Section 356 states: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence." "The purpose of this section is to prevent the use of selected aspects of a

6

conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed." (*People v. Arias* (1996) 13 Cal.4th 92, 156 (*Arias*).)

" ' " ' "[T]he courts do not draw narrow lines around the exact subject of inquiry. 'In the event a statement admitted in evidence constitutes part of a conversation or correspondence, the opponent is entitled to have placed in evidence all that was said or written by or to the declarant in the course of such conversation or correspondence, provided the other statements have *some bearing upon, or connection with*, the admission or declaration in evidence. . . .' " ' " ' [Citation.] This includes admission of portions 'of the same interview or conversation, even if they are self-serving' so long as they ' "have some bearing upon, or connection with, the admission . . . in evidence." ' [Citation.] 'Evidence Code section 356 " 'is founded on the equitable notion that a party who elects to introduce a part of a conversation is precluded from objecting on confrontation clause grounds to introduction by the opposing party of other parts of the conversation which are necessary to make the entirety of the conversation understood.' " ' [Citation.] 'The section permits introduction only of statements "on the same subject" or which are necessary for understanding of the statements already introduced. The "other conversation" referred to in Evidence Code section 356 must have some bearing upon, or connection with, the admission or declaration in evidence.' [Citation.] Evidence Code section 356 'applies only to statements that have some bearing upon, or connection with, the portion of the conversation originally introduced. [Citation.] Statements pertaining to other matters may be excluded.' [Citations.]" ' " (*People v. Johnson* (2022) 12 Cal.5th 544, 604-605 (*Johnson*).)

"A trial court's ruling under Evidence Code section 356 is reviewed for abuse of discretion. [Citation.] . . . 'To establish an abuse of discretion, defendants must demonstrate that the trial court's decision was so erroneous that it "falls outside the bounds of reason." [Citations.] A merely debatable ruling cannot be deemed an abuse of discretion. [Citations.] An abuse of discretion will be "established by 'a showing the

7

trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' [Citation.]" (*Johnson*, *supra*, 12 Cal.5th at pp. 605-606.)

### 3. *Analysis*

Even assuming the trial court abused its discretion in ruling that the text messages were not admissible under section 356, we conclude the error was not prejudicial.

Vallarta argues the text messages should have been admitted because the tasks listed in the punch list were larger in scale than Avila's testimony indicated, and thus the messages were "essential for the jury to understand the context of those so-called small tasks that led to the purchase of the supplies and the creation of the invoice." However, even assuming the text messages were relevant and admissible under section 356 to show the purchases were responsive to the punch list items, any error in denying the defense's motion to admit the messages was harmless.

The erroneous admission of evidence pursuant to section 356 is reviewed under the prejudice standard articulated in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*): whether it is reasonably probable that the erroneous ruling affected the verdict. (See *Arias*, *supra*, 13 Cal.4th at pp. 156-157.) Vallarta recognizes that the *Watson* standard normally applies to the application of the rules of evidence, but he argues that the heightened standard in *Chapman*, *supra*, 386 U.S. 18 should apply because the trial court's ruling "substantially gutted [his] primary defense in violation of his Sixth Amendment rights," rendering "the trial fundamentally unfair."

Any purported error in the trial court's ruling did not substantially impact Vallarta's defense. Even if Vallarta is correct that the text messages could help demonstrate that he purchased the items to complete the punch list tasks, the issue at trial was not whether Vallarta made unnecessary purchases at the paint store. The issue was whether Vallarta took the items purchased at the paint store along with other items belonging to Avila. Regardless of whether Vallarta took items that might be necessary to

8

complete painting the Clay Street properties or items not needed for the job, the jury concluded that Vallarta took items belonging to Avila and thus was guilty of grand theft.

The text messages also did not demonstrate that Vallarta used up the items at the Clay Street project rather than taking them. Several of the items Vallarta purchased at the paint store were not consumable items but rather, as Avila testified, equipment: "maintenance items or accessories or additions to the spray rig . . . ." Regarding the consumable items purchased from the paint store, Vallarta did not have time to use up the items to complete tasks at the Clay Street properties. The receipt is dated July 8, 2020, at 4:00 p.m. Video footage from the paint store differs from the receipt in that it depicts Vallarta leaving the store at about 2:38 p.m. that same afternoon. Even assuming the time depicted in the video is accurate, between 2:38 p.m. and about 6:00 p.m.—when the tenant testified he returned home to find the items gone and Vallarta not present— Vallarta would have had to return to the Clay Street properties and use up the items to complete punch list tasks, all while meeting with Avila at about 5:00 p.m.

Given the improbability of such a scenario, Vallarta did not attempt to argue at trial that he used the items from the paint store within this brief window. Instead, his defense was that someone else must have stolen the items. The introduction of the text messages would have little to no bearing on this defense. At most, the defense possibly could have used these messages to impeach Avila's testimony regarding the nature of the punch list items, but this was not the thrust of Avila's testimony and the other witnesses' testimony supported the jury's finding that Vallarta took the items from the Clay Street properties. Thus, the exclusion of the messages did not deprive Vallarta of a defense. The *Chapman* standard does not apply because the exclusion of the text messages did not render the trial fundamentally unfair. Under the *Watson* standard, even assuming error in denying the motion to admit the messages under section 356, it is not reasonably probable the error affected the verdict.

9

## B. *Ineffective Assistance of Counsel—Failure to Impeach Avila with Text Messages*

Vallarta further argues that even if the messages were inadmissible under section 356, his counsel could have impeached Avila with the text messages, and counsel's failure to do so constituted ineffective assistance of counsel. The Attorney General contends Vallarta's counsel could have had a tactical reason for not attempting to impeach Avila in this respect, and Vallarta was not prejudiced by the lack of impeachment. We conclude Vallarta has not demonstrated he received ineffective assistance of counsel.

"To establish constitutionally inadequate representation, a defendant must demonstrate that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*People v. Samayoa* (1997) 15 Cal.4th 795, 845.) "[R]arely will an appellate record establish ineffective assistance of counsel." (*People v. Thompson* (2010) 49 Cal.4th 79, 122.) " 'When a defendant on appeal makes a claim that his counsel was ineffective, the appellate court must consider whether the record contains any explanation for the challenged aspects of representation provided by counsel. "If the record sheds no light on why counsel acted or failed to act in the manner challenged, 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' [citation], the contention must be rejected." ' [Citations.]" (*Samayoa*, *supra*, at pp. 845-846.)

Vallarta has not demonstrated his counsel was ineffective for failing to impeach Avila with the text messages because there could be a satisfactory explanation for the lack of impeachment. " 'The failure to impeach a witness or to object to evidence are matters which usually involve tactical decisions on counsel's part and seldom establish a

counsel's incompetence. . . . " 'In the heat of a trial, defendant's counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings. Except in rare cases an appellate court should not attempt to second-guess trial counsel. . . .' " ' [Citation.]" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1140.)

As discussed above, Vallarta was not charged with making unauthorized purchases; he was charged with taking the materials he purchased, along with the paint sprayer and other items. Counsel might have concluded that impeaching Avila as to the precise nature of the punch list would have little impact on the defense case, and would distract from its main premise that someone else took the items. In addition, Vallarta purchased the items from the paint store two days after Avila texted the punch list, by which time Avila testified only "two or three small items" remained undone. Given this timeline, counsel might have determined that impeaching Avila with the text messages would not show that the items purchased were necessary to complete the Clay Street project.

Vallarta's counsel also might have concluded that drawing further attention to the question of whether the items purchased at the paint store were necessary to complete the remaining punch list items could harm the defense's case. Avila's testimony about the items Vallarta purchased on the company account was brief. Defense counsel reasonably might have been concerned that attempting to impeach Avila's testimony would lead the prosecutor to ask more detailed questions about the specific items Vallarta purchased on the company's account, further calling the jury's attention to why Vallarta's purchases exceeded any need at the jobsite. Instead, by declining to question Avila about the contents of the punch list, defense counsel was able to use the lack of a written punch list to his advantage, arguing in closing that the prosecution failed to meet its burden by not introducing the text messages.

In addition, for the reasons stated earlier in our opinion, Vallarta was not prejudiced by his counsel's decision not to impeach Avila with the text messages. Even

11

if Vallarta is correct that the messages might have discredited Avila's account of what the punch list entailed, the issue for the jury to decide was whether Vallarta took the items purchased at the paint store, not whether the items were related to punch list tasks. Even if the messages showed the purchased items had some connection to punch list tasks, and even if in this sense the messages discredited Avila's testimony, Avila's testimony about the punch list had little impact on the ultimate question of whether Vallarta took the items. Both the tenant and the tenant's son testified that the items went missing on July 8, 2020, Vallarta's last day at the site. The jury rejected Vallarta's defense that someone else must have taken the items, and impeaching Avila with the text messages would not have altered this outcome.

### C. *Lack of Unanimity Instruction*

Next, Vallarta argues that the trial court violated his right to a unanimous jury verdict by failing to instruct the jury on unanimity. He asserts that the prosecution alleged three acts of theft—the items purchased from the paint store, the paint sprayer, and other miscellaneous items—and without a unanimity instruction, the jury could have differed as to which act(s) of theft formed the basis for the conviction. The Attorney General responds that no unanimity instruction was required, and alternatively any error in failing to provide a unanimity instruction was harmless. We agree with the Attorney General.

### 1. *Factual background*

The amended information alleged that Vallarta unlawfully took from Avila's business "money and personal property which aggregates to a value exceeding Nine Hundred Fifty Dollars ($950) in any 12 consecutive month period." The trial court reviewed jury instructions with the parties, and neither party requested that the trial court provide a unanimity instruction in line with CALCRIM No. 3500, which states in relevant part: "The People have presented evidence of more than one act to prove that

12

the defendant committed the charged offense . . . . You must not find the defendant guilty [of the charged offense] unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

In her closing argument, the prosecutor contended Vallarta was guilty because he "stole almost $3,000 worth of painting supplies" from Avila and Avila's business. The prosecutor argued the property Vallarta took was worth more than $950 because the "paint sprayer alone that was at the property was close to $2,000." The prosecutor added that Vallarta also took the $907.55 in items purchased from the paint store, further establishing that the property Vallarta took was valued at more than $950. The prosecutor later argued that Vallarta was guilty because he took every "single piece of Mr. Avila's property left" at the Clay Street houses.

Defense counsel's closing argument focused on the position that the tenant's son lied when he testified that he saw Vallarta load the sprayer and hoses in his truck. Defense counsel also asserted Vallarta purchased the items from the paint store before Avila came to the Clay Street properties and told Vallarta his employment was ending, and thus Vallarta had no motive to steal at the time of the purchases. Finally, defense counsel generally contended the prosecution did not meet its burden because no witness apart from the tenant's son stated they saw Vallarta take the property, and "[t]he paint sprayer and supplies have never been found." Defense counsel cited the testimony of the woman who was at the paint store with Vallarta to argue that Vallarta left "the equipment and supplies" at the Clay Street properties.

### 2. *Legal principles and standard of review*

"Under the California Constitution, a unanimous jury verdict is required to convict a person of a crime. [Citations.] In particular, the jury must agree unanimously that the defendant is guilty of *a specific crime*. [Citation.] [¶] When a defendant is charged with a criminal offense, but the evidence suggests *more than one discrete crime*, either the

13

People must elect among the crimes or the trial court must instruct the jurors that they all agree on the same criminal act.  [Citations.]  [¶]  The requirement for a unanimity instruction ' "is intended to eliminate the danger that the defendant will be convicted even though there is *no single offense* which all the jurors agree the defendant committed." '  [Citation.]  By contrast, 'where the evidence shows only *a single discrete crime* but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the "theory" whereby the defendant is guilty.'  [Citation.]"  (*People v. Sorden* (2021) 65 Cal.App.5th 582, 615, fn. omitted (*Sorden*).)

" 'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence.  [Citations.]  The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.'  [Citations.]"  (*People v. Diaz* (2015) 60 Cal.4th 1176, 1189.)  Where applicable, "[t]he unanimity instruction must be given sua sponte, even in the absence of a defense request to give the instruction."  (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 569 (*Hernandez*).)  Because determining whether the trial court should have given a unanimity instruction "involves a mixed question of law and fact which is ' "predominantly legal," ' we review de novo whether the specific instruction was required.  [Citation.]"  (*Sorden*, *supra*, 65 Cal.App.5th at p. 616.)

### 3.  *Analysis*

We conclude that the trial court was not required to provide a unanimity instruction.  The evidence did not establish "several acts, any one of which could constitute the crime charged . . . ."  (*People v. Jennings* (2010) 50 Cal.4th 616, 679 (*Jennings*).)  Instead, the amended information alleged only one act:  that Vallarta unlawfully took money and personal property aggregating to a value exceeding $950

14

from Avila's business. The amended information alleged that Vallarta took the property between July 8 and July 9, 2020, and the evidence established that Vallarta took the entirety of the property at one time, when he left the Clay Street properties on July 8, 2020. In essence, the amended information alleged—and the evidence demonstrated—that Vallarta committed one act of grand theft by taking items belonging to Avila all at once. The jury found that Vallarta committed a single offense of taking items aggregating to more than $950; it did not amalgamate "evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that [Vallarta] must have done *something* sufficient to convict on one count.' [Citation.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)

In addition, even if Vallarta's act of taking various items from Avila constitutes more than one act, the continuing course of conduct exception applies. This exception "arises 'when the acts are so closely connected in time as to form part of one transaction' [citation], or 'when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time' [citation]." (*Jennings*, *supra*, 50 Cal.4th at p. 679.) Vallarta's taking of the items from the Clay Street properties occurred in a single afternoon. In addition, the prosecution argued the taking of the various items were prompted by the same motive: "the defendant was at the end of his job." (See *People v. Daniel* (1983) 145 Cal.App.3d 168, 175 [unanimity instruction not required for a grand theft by embezzlement charge because "[t]he charge alleged that the appellant engaged in a continuous course of conduct of theft from a single victim over a period of five months with a single fraudulent intent or objective"].) Recognizing that the continuing course of conduct exception is "quite limited" (*People v. Madden* (1981) 116 Cal.App.3d 212, 218), the exception applies here even assuming the charged offense consists of more than one act.

Finally, even assuming the trial court was required to provide a unanimity instruction, any error in failing to provide the instruction was harmless. The parties both

15

note a split of authority exists as to which standard applies: the beyond a reasonable doubt standard under *Chapman*, *supra*, 386 U.S. 18, or the standard in *Watson*, *supra*, 46 Cal.2d 818 that a reasonable probability exists that a result more favorable to the appellant would have been reached. We need not decide which standard of review applies, as the error is harmless even under the heightened *Chapman* standard.

"Under *Chapman*, '[w]here the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that [the] defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless.' [Citation.] For example, where the defendant offered the same defense to all criminal acts and 'the jury's verdict implies that it did not believe the only defense offered,' failure to give a unanimity instruction is harmless error. [Citation.] But if the defendant offered separate defenses to each criminal act, reversal is required. [Citations.] The error is also harmless '[w]here the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence . . . .' [Citation.]" (*Hernandez*, *supra*, 217 Cal.App.4th at p. 577.)

Vallarta argues that he raised different defenses concerning the three categories of items he allegedly took. He asserts that as to the items purchased from the paint store, his defenses were that he used the items in completing the paint job, he had no motive to steal the items, he had never made unauthorized purchases before, he would not have stolen the items because his name was on the invoice, and the items were taken by someone else after he left the items at the Clay Street properties. He argues that as to the paint sprayer, his defenses were that the tenant's son was not credible in testifying he saw Vallarta load the item in the truck, there was no timeframe in which he could have taken the sprayer, and the sprayer had not been at the property for some time and may have been taken by someone else. Finally, as to the other miscellaneous items, Vallarta

16

contends his defenses were that no one saw them being taken, they may have been taken by someone else, and their identity and value were unclear.

However, Vallarta's basic defense to the one charge involving items aggregating to more than $950 in value was the same: he did not take the items and someone else did so. Vallarta did not argue at trial that he used the items purchased from the paint store to complete the work at the Clay Street properties. Instead, he focused on asserting that he left all the items at the properties upon leaving on July 8, 2020. Apart from an officer's brief testimony concerning the statement by the tenant's son, the one witness the defense called was the woman who accompanied Vallarta to the paint store. She testified that before leaving the Clay Street properties on July 8, 2020, she and Vallarta moved "the equipment and supplies" to a different location on the properties and left the items there under a tarp. She stated that the items left under the tarp included the sprayer, but she did not otherwise differentiate between the various items. Likewise in the defense's closing argument, counsel did not make separate arguments concerning each category of items. Counsel argued that the tenant's son's testimony was not credible—testimony that related primarily to the sprayer—and counsel argued Vallarta did not have a motive to purchase unneeded items from the paint store. However, the overall thrust of counsel's argument was that the prosecution failed to meet its burden of proof regarding the missing items generally and that someone else must have taken the items because Vallarta left them at the Clay Street properties.

This is not a case where "[t]he different defenses gave the jury a rational basis to distinguish between the various acts"; instead, this was " 'a case where the jury's verdict implies that it did not believe the only defense offered.' [Citation.]" (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853.) Thus, no unanimity instruction was required.

In addition, even if the jury might have differed as to whether Vallarta took the items from the paint store or the miscellaneous items, the proof that Vallarta took the

17

sprayer was particularly strong, as the tenant's son testified he saw Vallarta load the sprayer in his truck. Avila testified that he paid $2,195.04 for the sprayer in May 2020, documentary evidence confirmed this testimony, and the defense at trial did not dispute the sprayer's value exceeded $950. Thus, we conclude beyond a reasonable doubt that the jury would have convicted Vallarta of taking property valued at more than $950 even if a unanimity instruction had been provided.

### D. *Cumulative Effect of Errors*

Vallarta argues that the cumulative prejudicial effect of the errors asserted above deprived him of a fair trial. "The premise behind the cumulative error doctrine is that, while a number of errors may be harmless taken individually, their cumulative effect requires reversal." (*People v. Mani* (2022) 74 Cal.App.5th 343, 378.) We have assumed error in one of the three issues discussed above and found no prejudice from that error, and we have found no error regarding Vallarta's two remaining issues. Thus, Vallarta's cumulative prejudice argument must fail. Even assuming error on more than one of the issues raised above, Vallarta was not deprived of a fair trial. Any assumed errors that occurred during Vallarta's trial "were harmless, whether considered individually or collectively. [Vallarta] was entitled to a fair trial but not a perfect one." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.)

### E. *Denial of* Romero *Motion*

Finally, Vallarta argues that the trial court abused its discretion in denying his *Romero* motion to dismiss the prior strike at sentencing. The Attorney General responds that no abuse of discretion occurred because Vallarta falls within the spirit of the "Three Strikes" law. We discern no abuse of discretion in the trial court's ruling.

### 1. *Factual background*

At trial, Vallarta admitted he sustained a strike conviction within the meaning of the Three Strikes law (Pen. Code, §§ 667, subd. (d), 1170.12, subd. (b)) in that he was convicted of robbery in July 2015.

Prior to the sentencing hearing, Vallarta filed an "Invitation for the Court to Dismiss Prior Strike Conviction (*Romero* Motion)," citing Penal Code section 1385. Vallarta's *Romero* motion cited four categories of factors he asserted supported dismissing the prior strike conviction: (1) the nature and circumstances of the present felony; (2) the nature and circumstances of the prior strike conviction; (3) his background, character, and prospects for future success; and (4) the lengthy sentence that would be imposed if the prior strike were not dismissed.

The trial court denied the *Romero* motion. The court noted it was "very familiar with the facts of this case," having presided over Vallarta's trial. The court stated the instant offense was not violent but "there does not appear to be an acknowledgement of guilt at this time" by Vallarta. The court noted that it found two aggravating factors true at trial, Vallarta's prior strike was a violent offense, Vallarta was placed on parole for another offense, Vallarta committed the instant offense soon after being released from parole, and Vallarta was convicted of burglary in 2014 and a drug offense in 2019. The court stated Vallarta had "a history of substance abuse" that needed to be treated, and had "a history of gang association." The court took note of statements provided in support of Vallarta but concluded: "Looking at the totality of the circumstances, I find the defendant is not outside the spirit of the *Romero*, [and] the motion to dismiss the strike is denied."

### 2. *Legal principles and standard of review*

"The purpose of the Three Strikes law is 'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.' [Citation.]" (*In re Young* (2004) 32 Cal.4th 900,

19

909.) However, under the Three Strikes law, a trial court "may exercise the power to dismiss granted in [Penal Code] section 1385" to dismiss a prior strike allegation. (*Romero*, *supra*, 13 Cal.4th at p. 504.) "In ruling on a *Romero* motion, the court must consider whether 'the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*People v. Salazar* (2023) 15 Cal.5th 416, 428.)

"[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under [Penal Code] section 1385 is subject to review for abuse of discretion." (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' " [t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376-377.)

### 3. *Analysis*

Vallarta contends the trial court's denial of his *Romero* motion represented an abuse of discretion because "the underlying crime did not involve violence or even a threat of violence, numerous factors show that [Vallarta] is no longer within the Three Strikes Scheme, and the trial court failed to properly consider [Vallarta's] age at the time he committed the strike prior." While admitting he "did not live a crime-free life prior to" the instant offense, Vallarta focuses his argument on the position that the trial court

20

failed to consider his age at the time of the prior strike offense, and he asserts that if the trial court had considered his age along with other relevant factors, this would have weighed in favor of dismissing the prior strike. We find no abuse of discretion in the trial court's denial of the *Romero* motion.

We agree with Vallarta that his age at the time of the prior strike offense was a relevant factor in considering the *Romero* motion. (See *People v. Avila* (2020) 57 Cal.App.5th 1134, 1142 [age at time prior strikes were committed "even if not dispositive, is plainly relevant to the nature and circumstances of the strikes and could be a mitigating factor"].) However, the appellate record contains no evidence that the trial court failed to consider Vallarta's age at the time of the prior strike.

As Vallarta concedes, "a trial court is presumed to have correctly applied the law on a silent record." "Absent evidence to the contrary, we presume the trial court knew the law and followed it." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.) "When, as here, the record is silent as to the trial court's reasons for declining to strike a prior strike, we presume that the trial court ' "correctly applied the law." ' [Citation.] Only in 'an extraordinary case—where the relevant factors . . . manifestly support the striking of a prior conviction and no reasonable minds could differ' would 'the failure to strike . . . constitute an abuse of discretion.' [Citation.]" (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637.)

Vallarta's *Romero* motion cited four categories of factors to support dismissing the prior strike conviction, none of which specifically referred to his age at the time of the prior strike offense. Vallarta did note that he was 31 years old at the time of sentencing and that the prior strike offense was committed more than 10 years earlier. The court stated that it read the defense's motion and thus we presume the court was aware of Vallarta's age at the time of the prior strike. However, Vallarta did not assert that his age at the time of the prior strike offense warranted dismissal of the prior strike. As a result, the trial court did not discuss this factor. The court's decision not to dismiss the prior

strike was not "so irrational or arbitrary that no reasonable person could agree with it," and thus the trial court did not abuse its discretion in denying defendant's *Romero* motion simply because he was a young adult at the time of the prior strike. (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

Vallarta also asserts the following factors weighed in favor of dismissing the prior strike: "his willingness to participate in rehabilitation, his family connections and support, his gainful employment and career prospects, his lack of a substantial and violent criminal history, and the fact that most of his crimes were committed when he was a youthful offender." Once again, we presume in the absence of evidence to the contrary that the trial court considered any such relevant factors. The defense raised several of these considerations in its *Romero* motion, and the trial court stated it read this motion. In addition, Vallarta's family connections and support were raised to the trial court's attention immediately before its denial of the *Romero* motion, as Vallarta's father, mother, and sister provided statements to the court, and the court recounted and agreed with the family's assessment that Vallarta needed substance abuse treatment.

Nothing in the appellate record indicates the court failed to consider the factors Vallarta cites. Given factors such as Vallarta's criminal history and the nature of the instant offense, the trial court's decision not to dismiss Vallarta's prior strike conviction is not irrational or arbitrary. Thus, the trial court did not abuse its discretion in denying Vallarta's *Romero* motion.

### III. DISPOSITION

The judgment is affirmed.

_____

Greenwood, P. J.

WE CONCUR:

_____

Danner, J.

_____

Bromberg, J.

H052750 People v. Vallarta